**K. O. LEE COMPANY, Inc., a Corporation, Plaintiff,**

v.

**UNITED STATES of America, a Sovereign Power, Defendant.**

Civ. 65–17N.

United States District Court
D. South Dakota, N. D.

Jan. 30, 1968.

Douglas Bantz, Aberdeen, S. D., for plaintiff.

Harold Doyle, U. S. Atty., Sioux Falls, S. D., and Forbes Ramsey, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BECK, District Judge.

This is an action by the K. O. Lee Company, Inc.,[1] against the Government for a refund of disputed income taxes paid under protest and pursuant to a demand for additional income taxes by the Collector of Internal Revenue in his assessment against Lee on January 29, 1963, limited however in this part[2] of its case to the increase in the tax by reason of the Collector's changing of the depreciation period on certain plant equipment to fifteen years from Lee's earlier adopted ten and certain other increases assessed by reason of adopted tax return procedure, not regulation-wise authorized.

Invoked as to the court's jurisdiction and as the statutory basis for the suit are the provisions of 28 U.S.C.A. Section 1346(a) (1).

The case was tried to the court without a jury. On the record then made and on arguments, oral and in writing

---

1. Hereinafter referred to as Lee.

2. The other part, relating to accumulated earnings tax was treated and tried to a jury as a case separate from this one and concluded, as the Government's appeal on its own motion as of August 10, 1966 was dismissed.

and on the record as a whole, the court makes the following:

## FINDINGS OF FACT

1.

That Lee at all times pertinent here was and is a corporation duly organized, licensed and existing under the laws of the State of South Dakota, with its principal place of business at 1110 First Avenue, SE, Aberdeen, South Dakota, a manufacturing concern and so engaged for fifty years last past, more or less, exact period not material, nearly thirty years thereof limited to the making of machine tools, with a reputation in that field under the same management as one of the best and with extensive market outlets in the United States and in that industry throughout the world. Its fiscal years for income tax purposes ends on the thirtieth of September each year.

2.

That Lee for income tax purposes adopted a ten-year depreciation period for the plant equipment bought in its fiscal years 1944, 1945, 1946, 1947 and 1948, which in 1953 by the Collector was changed to fifteen. Also, that the longer period was upheld in Lee's challenging action in this court, as the late Judge Mickelson in that case entered judgment to that effect on January 16, 1958.

3.

That the parties after the entry of that judgment reached agreement that the adjusted cost basis for depreciation purposes on the equipment bought in 1944 was $22,534.61, on such transactions in 1945, 1946, 1947 and 1948 in that order being $55,816.57, $89,603.92, $9,046.39 and $17,083.12 and that the unused amount of those costs on the 1944 purchase was $2,718.41 at the end of the fifteen-year which ended September 30, 1958, on the same date for those purchased in 1945, 1946, 1947 and 1948 in that order, $8,888.16, $7,747.71, $1,254.39 and $3,412.23, with qualifications by the Government under sufficient evidence that a further reduction of the unused

depreciation on the 1944 purchase down to $5.22, is in the $2,713.19 not being taken for depreciation within the fifteen-year period, and on the same theory that the $8,888.16, the $7,747.71 and the $1,-254.39 in that order should be at $4,132.08, $2,291.63 and $641.79, with the agreed on $3,412.23 not affected.

4.

That Lee pursuant to the ordered change accepted the longer depreciation formula, but with the application thereof in its tax return for 1959 explained as follows:

"$2,713.19 Depreciation disallowed by Revenue Agents report dated Dec. 10, 1951 for the year of 1944 and sustained by Federal Court decision dated Jan. 16, 1958. The Agent figured shop equipment depreciation on a 15 year basis. 1958 [sic] is the 15th year so that the full amount disallowed in 1944 should now be deductible. Similar amounts disallowed by Agent for the years of 1945, 1946, 1947 and 1948 and sustained by the Court will be deducted by us in our returns for 1960, 1961, 1962 and 1963 respectively, If you have any objection to this method of handling and restoring depreciation amounts disallowed, will you please advise how you want the items handled.",

and to the same effect in its returns for 1960, 1961 and 1962.

5.

That the Collector adopted Lee's method of complying with the longer depreciation as it was explained in its returns for 1959–1962 and as the payments were applied in that manner, which posture he changed in his assessment when he rejected the lump sums on the fifteenth year anniversary dates and held that the unused depreciation on each of the purchases should have been evenly distributed over the years remaining of the fifteen.

6.

That Lee complied with the terms of that assessment and all of the conditions for commencement of this suit and as

for this finding there is no dispute, nor is it under this record in any manner being challenged.

## CONCLUSIONS OF LAW

### 1.

[] That Lee's lower remaining unused depreciations on the purchases for 1944, 1945, 1946 and 1947, are in its omissions to take the depreciation on those items when they could and should have been taken but weren't and which for those reasons were lost.

### 2.

That the judgment in January 1958, sustaining the Collector, became the law of the case insofar as it settled a fifteen-year depreciation period for the items of purchase covered in this case and that the acceptance of the unused depreciation in a lump sum was a mistake of law which, however, was legally corrected as the assessment was made in 1963.

While Lee strenuously insists that those actions amounted to an estoppel and a complete defense to the Collector's new approach, it is otherwise it seems, provided boundaries of statutory limitations are not violated. Blackhawk-Perry Corp. v. Commissioner of Internal Revenue, 182 F.2d 319 (8 Cir. 1950), where it is said and held:

"The Government, and not the Commissioner, is interested in the collection of taxes; and the Government cannot be estopped by a mistake made by a taxpayer. A taxpayer, as well as the Commissioner, is presumed to know the law, and ignorance of the truth is a prerequisite to the right to assert an estoppel in pais. Hobbs v. McLean, 117 U.S. 567, 6 S.Ct. 870, 29 L.Ed. 940. And it is the law that 'Within the statutory period of limitations and in the absence of a binding settlement, the Commissioner had authority to re-examine and redetermine the petitioners' tax liability.' Sweets Co. of America v. Commissioner [of Internal Revenue,] 2 Cir., 40 F.2d 436, 438; Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379."

See also Guenzel's Estate v. Commissioner of Internal Revenue, 258 F.2d 248 at 253, (8 Cir. 1958):

" * * * It is well established that the Commissioner is not estopped from correcting a mistake of law. In Automobile Club of Michigan v. Commissioner [of Internal Revenue,] 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746, the Commissioner had ruled in 1934 and 1938 that taxpayer was exempt from taxation as a club. The Commissioner revoked these rulings in 1945 and directed taxpayer to file returns for 1943 and subsequent years on the basis of his new ruling. In answer to the taxpayer's contention that the Commissioner was equitably estopped from applying the revocation of his previous rulings retroactively, the Court states (353 U.S. at page 183, 77 S.Ct. at page 709):

'This argument is without merit. The doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law. * * *'.

See also Mertens Law of Federal Income Taxation, Vol. 10, § 60.17.".

Lee, accordingly, will submit a judgment based on amendments of all or any of its returns for 1959, 1960, 1961, 1962 and 1963, in line with the rules herein prescribed, with full credit for each of the fifteenth year anniversary payments and interest providing the end results shows overpayment under the assessment, otherwise a judgment for dismissal to be submitted by the Government, with costs to the prevailing party as provided for by law. Int.Rev.Code of 1954, Sections 1311–1314, as amended.

Dated this the 30th day of January, 1968.